Good morning, Your Honors. My name is Diana Bowen, and I'm an attorney with Thompson & Horton. We represent the Dallas Independent School District, a public school district in the state of Texas. We are here today because the district court's decision puts public school districts between a rock and a hard place. to either accept the parent's request to pay for her child's private education or throw services at the student without having evaluated whether the services are appropriate or needed. Specifically, while the district court found that this private school student was evaluated in a timely manner by Dallas ISD and was not a transfer student entitled to comparable services, it incorrectly held that Dallas ISD was required to provide what it termed temporary services under the Individuals with Disabilities Education Act during the time that the district was conducting its own initial evaluation. This holding not only creates new provisions that are nowhere in the statute, it is against clear precedence set by the courts and the U.S. Department of Education and would significantly impact that every public school district in the Fifth Circuit, how they address students placed in private schools. In fact, this decision goes against the standards set out in the recent U.S. Supreme Court decision in Andrew F. v. Douglas County that an offer of a free appropriate public education, or FAPE, must be drafted in compliance with a detailed set of procedures, must include the child's present levels of academic and functional performance, and must be appropriate in light of the child's circumstances. A school district cannot meet this standard without first evaluating the child. All right, let's assume they do the evaluation and the child does need education. What happens for the gap period while the evaluation is being performed? Why does the parent not get reimbursed for that? Your Honor, as stated in Andrew S. v. Cleveland ISD, a school district has a right to evaluate the student with their own personnel and with their own evaluations. As the U.S. Department of Education has stated, during that time period, the child is just like a regular education evaluation. It is not entitled to comparable services in this case because she was not enrolled in the school district at the time. That the provision of services is dependent on enrollment. Now, an offer of FAPE is not dependent on enrollment, but an offer of FAPE is dependent on an evaluation. Counsel, are you saying that because of the district court's finding, if I recall, that there was no unreasonable delay, there were no procedural delays, that during that whole period of developing an IEP, there is no obligation? That is correct, Your Honor. The regulations, the statutes do speak of temporary services, but not, it seems to me, quite in the context of this child coming to your school district. Looking at Forest Grove, though, with the general right of the district judge to make appropriate orders, including reimbursements when it seems appropriate, my concern is that we're sort of in a gap here, maybe getting back to what Judge Owen is talking about. If there were actual delays on the part of Dallas, where would we be? Would you say that Forest Grove would hold that we have the right, the district judge does have the right, to order reimbursement during the period if there was unreasonable delay on the part of the school district? No, Your Honor. Actually, in Forest Grove School District v. TA, the Supreme Court said that even when there was a denial of FAPE or a delay in the evaluation or a violation of the IDA, the court must consider all relevant factors, including the notice provided by the parents and the school district's opportunities for evaluating the child and determining whether reimbursement for some or all of the costs of the child's private education is warranted. In Morristown Township Board of Education v. Well, before you leave that case, it seems to me you just read why, in part, if there were delays on the part of Dallas, there would be a right to reimbursement for some period of that time. You're entitled to try to develop the program necessary for a particular child, but if you don't reasonably use that period, then it does seem to me that the discretionary power of the district court comes into play in order of reimbursement for that period. And, Your Honor, the district court in this case said that we appropriately and timely evaluated the child. And in this case, we did evaluate the child in an appropriate timeline. And during that timeline, the district court as well as other district courts… Let me ask about that. Because the timeline, you didn't even have… The first time you offered a meeting, maybe not offered, but the first time there was a meeting was, it seems to me, in December. And I forget what the acronym is. You know all of them. ARDC, I believe it is. Yes. But that's not the meeting that you offered in December. It was a transfer student meeting. It seems to me right there, I have some wonder, I have some doubt as to why the district court would have held that you did indeed follow the proper procedure. It seems like the ARDC at least should have been held by December, if not earlier than that. Your Honor, an ARDC meeting was attempted to be held in December. As the court ruled, the two-month delay between the time that we first notified that this student was in our district until the time of the December 17th meeting was reasonable because number one, they needed to gather information from the other school district. The information presented by the parent in that September 13th letter was deficient. The court clearly held that the California IEP was sadly deficient and that it was understandable that the district needed additional information. And the parent delayed that information by over a month of providing us the prior evaluation from California. We requested three dates in early December for the ARDC meeting. They selected the December 17th date due to holiday schedules and testing. We came to that ARDC hoping to be able to put in a plan and a place for that student. The parent told the teachers from the private school not to attend that ARDC without giving us the vital information we needed in order to reschedule that ARDC. So we came to that ARDC with our hands tied. And we attempted to put together a plan that would be appropriate. And what we found and what the district courts and other courts have found is that when a school district finds that it is necessary to evaluate a child, they should have the right to do that. They should not have to provide IEP services in the dark. Well, it seems to me the district court sort of took all this into account and only ordered the Dallas Independent School District to pay the spring semester. Is that correct? That is correct, Your Honor. It seems like the trial court sort of balanced all the equities and did an appropriate thing. Your Honor, the district court in this case did look at the equities in this manner, but it did hold, which will affect all public school districts in the Fifth Circuit, that there was these temporary, quote, services that were required during the pendency of the evaluation. And that holding is against the clear. Well, this is a little bit odd situation. We have a child who had been declared by a provider under the Act that she needed special services. And so she transfers. And it seems like to me the child should be covered. I mean, she's been determined to be covered. She's going to be. You all determined she needs to be covered. And so there's a gap in time period there that just couldn't get done. What you're telling me is any time a child transfers in this situation, there's going to be a period of time where the parent can't get reimbursed. And tell me where the language in the Act says that that's a correct result. Your Honor, the U.S. Department of Education in its OSEP policy manual specifically states when a student moves from State A to State B, State B must first ascertain whether the evaluation or the information that it receives with State A is appropriate. This is because education is traditionally a state function. In fact, the definition of a free appropriate public education under 20 U.S.C. 14019 says that faith is defined as special education and related services that meet the standards of the state educational agency. This rationale and this policy is because one state may have different eligibility requirements, may have different services, may have different standards than another state. It is undisputed that this child came from California with a California IEP and a California educational evaluation. All that says to me is once the state has had their chance to evaluate, so here's the level of services to which you think you're entitled, you pay that retroactively. You have to pay whatever you determine is appropriate for the child, but you have to pay it retroactively. You can't leave the child in a gap. Your Honor, Morristown Township Board of Education and Blackmun v. District of Columbia held that, one, it would be unfair to require a school to reimburse a defendant for tuition during the 80-day window of time it had to fulfill its obligations under the Act. Defendants were not entitled to tuition reimbursement until they actually failed to evaluate him and convene an IEP meeting during the statutory period. Blackmun v. District of Columbia said, even when there was a violation of faith, quote, to provide reimbursement for the period of time prior to the expiration of the 45-day period effectively would disregard the fact that the school had a 45-day window in which it could have fulfilled its responsibilities under the statute. And then District of Columbia v. Abramson School refused to actually complete evaluation in that case, but the parent was only entitled to reimbursement from the date that an eligibility determination should have been made. The U.S. Department of Education has also stated that when a child moves from another state with an evaluation and the ISD determines that it's necessary for the evaluation to be completed, quote, public agencies are not required to make the eligibility determination, conduct the initial meeting of the IEP team to develop the child's IEP, or initially provide special ed and related services to a child with a disability during the initial evaluation timeline. And, in fact, the procedures are if there is a dispute at that time because of the evaluation or because of what was happening, the U.S. Department of Education has said that the state placement for that child is general education. So there are numerous courts. The U.S. Department of Education says, yes, during that timeframe, there is no obligation or responsibility for services. Why? Because how do you provide services to someone that you have not currently evaluated their current needs? As the Supreme Court stated in Andrew F., an IEP is not a form document. It is constructed out only after careful consideration of the child's present levels of achievement, disability, and potential for growth. The district's offer of FAPE in this case was timely and was complete. As the district court held, the district met its child find requirements in a timely manner. As the district court held, this student was not a transfer student entitled to comparable services. And the delay in this case was predominantly within the control of the parent, as the district court held. The parent was responsible for the delay in contacting Dallas ISD. The parent did not sign consent in this case until January 24, 2014. The parent restricted the contact with the private school.  The parent did not get the information to the district until a month after they requested it. And, in fact, the district had to go through the steps and the procedures for timely and effectively evaluating the student within the 45-school-day timeline, holding an ARD within 30 days. And, unfortunately, that ARD did not occur until the end of the school year. But the delay was within the control of the parent. Counsel, you're real clear on the law. And you have problems with parents before. You'll have some again. But to give no plan until one week before graduation with all of the information you had on Kelsey, that's a little bit hard to understand. Your Honor, we did not— And what would have happened if you'd transferred her from Winston to your public school a week before graduation? Your Honor— Probably she'd be back where she was in South Korea. Your Honor, we will never know what happened because we were not given a good-faith opportunity to provide the services, to provide the evaluation. This student is not a student that has been in public education all her life or has been evaluated. In fact, in her 13 years of education, she has only attended a public school for one semester. And in that one semester, she was evaluated. But after that semester, there was extreme needs that needed to be addressed that had not been addressed by a school district. And so the Dallas Independent School District had the right to evaluate and provide the appropriate services in accordance with both federal law and regulations. I really don't understand why, without any cross-appeal, this case is here today before this Court. But that's your business, and I've heard your argument. Thank you, Your Honors. May it please the Court, Counsel, Roy Atwood here with my partner, Katherine Gamaris, on behalf of Michelle Wood, who is also here with us in the courtroom today. Let me begin by saying, Judge Willoughby, I completely agree. I don't understand why this case is before this Court either, but it is. Justice Kagan recently wrote in the Frey decision of the Supreme Court that the Individual Education Program, the IEP, is the centerpiece of the IDEA's education delivery system and serves as the vehicle or means of providing a free, appropriate public education. The IDEA requires that a school district have in place an IEP for each student within their jurisdiction. Well, you know the facts, and you're going to get into that, but it seems to me, how in the world could Dallas have had an IEP in place? If I understand it, the mother contacted the school district four weeks after school started to process the procedure. Your briefing suggests that the IEP from California ought to be enough. I think Dallas has you on that, that they are entitled to develop their own IEP. You can tell them where I'm wrong. They run through the process, a fair number of delays, probably allocable to both sides, but the school district, you do have this finding by the district judge that, which is a little surprising to me, but nonetheless, that they were timely in the development of this. So where are we in all of that? There's a lot of law that we heard from Dallas that's in the briefing, and you have to overcome that. It's not enough to say that the fair thing here is X. The fair thing here is that she got the education she needed and maybe that Dallas reimbursed. We've got to see if that's consistent with the IDEA and the regulations under it. It's completely consistent, Judge Southwick, with the IDEA, with the way that Judge Fish ultimately resolved this case. Let me deal with that child finding of Judge Fish's. The argument here is typically this would be a transfer student situation. A student moves from one school district to another school district, they're a transfer. Because the student was present in the Winston School as a result of the placement with Los Angeles Unified School District, she didn't move school districts when her mother moved and her residency changed. An unusual, unique, factual situation, no doubt. There's the transfer provision that says that if you transfer, then you have to provide comparable services until you conduct your own full individual evaluation. We do not dispute that Dallas had the right to conduct its own full individual evaluation. What we dispute is the timing. Because either you're a transfer student or you're just in private school. We presented the child find issue to the court because even students who are in private school, within a public school district, are entitled to consideration by the school. The school district still has to go out under the child find provisions, find that student, and decide if they need to provide services to that student. The idea of child find was raised with the district court solely as a matter of saying, look, even if you find they're not a transfer student, the district still has obligations to that student. Child find obligation ended the day, September 19th, when DISD received the letter sent by me on behalf of Ms. Woody that contained the Los Angeles Unified School District IEP. Because when they got that information, their duties to go find children who need services ended. They knew they had a child in their jurisdiction who required services. Judge Fish's finding regarding the child find obligation and that the length of time spent was reasonable, we respectfully disagree with that finding. It's not key to the conclusion he ultimately reached because he decided this case based upon procedural violations that denied Kelsey a free appropriate public education. Well, how do those two go together? The procedural violations and that it was a timely determination on the part of the school district? Because he evaluated child find under the cases that deal solely with child find. And when he looked at those child find cases, he relied upon all the cases he relied upon are cases where the district was not presented with an IEP that already identified the student as qualifying for special education services. The cases he relied upon were cases where a child is not doing well in school and the parent or a teacher raises to the school district, I think this student may need to be evaluated. Because they don't seem to be doing well, there may be some disability issues here. Let's have this student evaluated. He looked at those cases and the length of time it took for the school district to get all that process done, decide they were going to do an evaluation, then get consent from the parent and do the evaluation. And he held that under child find, it was reasonable. But when on September 19th, you know that you have a child within your school district who has previously qualified for services under the IDEA, and you let this go all the way to graduation before you present an IEP to the parent, that's a procedural violation that is per se harm, and that's unreasonable, and that is a violation of the IDEA. It certainly is, to me, an unreasonable delay. The explanations of it may give different opinions on it. But why is that? You called it a procedural, I think you said that's a procedural failing on the part of the school district. Is it the delay itself that is the procedural? Just ultimately that there is a procedural result of defect from that long delay? I mean, you're focusing so much on child find. Is there case law that tells us in the situation that we have here when someone comes in and previously haven't been qualified for such services on the IDEA, that that alters the obligation of the school district, responsibility of the school district, that they have to go through and develop their own IEP? What the IDEA requires is that the district evaluate the student. What the statute says, what the regulations in Texas state, the Texas Administrative Code says, when a student is referred to the local district, the district shall convene an art committee meeting. Not after seven months, not three months later in December, not seven months later in April, not at the end of the school year in May. They shall convene a meeting then. That's what DSD and the amicus on their behalf argue that Judge Fish has created new law here and that the ramifications to the school districts in Texas are horrendous and uncertainty is created. There's no uncertainty. The regulations and the IDEA require that the school district, once a student is identified to them as qualifying for services under the IDEA, they are to convene an art committee meeting and do their analysis. That art committee meeting should have taken place within the first 30 days that Kelsey was brought to their attention. Why 30 days? Pardon me? Why 30 days? Well, 30 days is the time period the court, I say immediately, but what does immediately mean? As soon as practical, as soon as possible. Under the IDEA, once a school district evaluates a student, the statute provides they have 30 days to convene that art committee meeting. According to DSD's argument relating to the transfer provisions, they say there was no duty to provide comparable services. And let me explain to you in just a minute where that temporary services language from Judge Fish's opinion came from. According to DSD, if Ms. Woody had left Kelsey at the Winston School but had gone down to DSD and filled out the enrollment form, then she would have qualified as a transfer student and they would have been required to provide temporary services. What DSD wants you to conclude, if you reverse the decision, is that because we sent a letter that included the IEP from Los Angeles rather than filling out the enrollment form, now there's a gap. Now Kelsey can fall through the cracks. Clearly not what Congress intended with the provisions of the IDEA. Indeed, the very memorandum from the Office of Special Education Programs that was relied upon by DSD and included in their appendix stresses the importance of making sure that the rights of a disabled student are, quote, not compromised because of a move. What did DIS do? They convened this transfer meeting, got the ARD committee together, and had a transfer meeting on December 17th of 2013. At that meeting, they decided, quote, student will receive special education services on a temporary basis, close quote. That's their language. This is not something that Judge Fish dreamed up. That's what they committed to do in December and never did. DSD never said enroll Kelsey at Hillcrest High School while we evaluate her and we'll provide this program for her. DSD never gave Ms. Woody the assurances that she would have needed to take her psychologically fragile child out of the program where she had been placed pursuant to the Los Angeles Unified School District Agreement and where she was secure and successful. The Ninth Circuit in 2015 in the Sam K. versus Hawaii Department of Education case addressed a similar situation. In that case, the distinction between unilateral placement and not unilateral placement was key because different statute of limitations applied depending upon their finding. The Department of Education in Hawaii did not make a clear offer of a free appropriate publication to Sam until March of that school year. The court stated, quote, prior to that time, Sam was still attending the Loveland program as the DOE necessarily knew. The DOE had not proposed anything else and it presumably did not intend that Sam would receive no educational services in the meantime. By waiting so long into that school year to propose a different placement, the DOE tacitly consented to his enrollment at the Loveland Academy. Then the court went out and awarded tuition for the entire school year in that case. There's an interesting situation in this case because counsel for DSD stood here and said, the clear precedent mandates reversal. There's not a case that has been cited with which we disagree. The cases that DSD cited are cases in which, as the court pointed out, the court made an equitable adjustment of the amount of the award where it said for an 80-day period they had the right to evaluate and so we're not going to award tuition for that period of time. Judge Fish took care of that when he awarded one semester of tuition in this case. Are you saying you didn't take a cross appeal? Are you saying, in fact, though, that he was in error? That under what you're telling me about the law, the proper ruling, not before us to enter, would have been to have awarded the full amount for both semesters? I'm trying to understand the law as you put it. To say that you only would be entitled to the second semester doesn't seem consistent with the law as you're describing it to us. Those cases that talk about only the second semester are those cases where the court said, look, the district, from the time they get notice, the district has an opportunity, has time to conduct their evaluation. We did not cross appeal on the reduction of the award from the special hearing officer by Judge Fish from a four-year tuition to a half-year tuition. I think there is grounds for an award of the entire school year of tuition because of the procedure violation and the complete denial of a fate to Kelsey. But we didn't cross appeal on that. I want to make sure I understand the law. We're not looking at half the law. We're looking at all the law that would be applicable to your situation regardless of what remedy we might be entitled to enter. As I understand the law, as I looked at it, in fact, they are entitled to prepare their own IEP when a child shows up like this. There is some period of time, and until that's run, the temporary services rule that might apply to a transfer student otherwise did not apply factually in this case. And at most, they would be obligated to pay services once their improper delay or other procedural defaults prevented the plan from being in place in a timely manner. And from then, they would be obligated to make the payments and reimbursement. Is that more or less what you're saying, and that they would not be obligated to pay for their first semester because they are entitled to develop their own plan? Well, there's two issues at play there, Your Honor. First of all, in a situation where a parent disagrees with the school district and places the student in private school while they are resolving the dispute with the school district, then the parent is at risk if they take that risk, but the parent is entitled to a tuition reimbursement for the entire period of time. We believe that that situation applies here because... Starting when? Starting with the beginning of the school year. Because starting when DSD got noticed in September. They couldn't have done anything before they got noticed in September. Absolutely agree. Because she was under an IEP, they had the right to decide we're not going to follow that IEP, but then they had to do their assessment and decide. The cases that counsel cited that we were talking about are cases where the court was determining, okay, at what point does the... So we have a situation where we have a parentally placed student, and they're brought to the attention of the school district. Not where there's a disagreement with the school district about the placement, but where the student's brought to the attention of the school district, and the school district then has to do their evaluation. What those cases say is you have to give them time to do the evaluation, but then if they don't do the evaluation properly, or they do the evaluation and the services are not appropriate for the student, then the parent is entitled to reimbursement going forward. What we're saying here is the obligation to evaluate Kelsey kicked off on September 19th when they got that IEP. And what Judge Fish found was, okay, well, we'll give them that fall semester to have conducted that evaluation. They have the ARD meeting, they get consent, they take their 45 school days to do their assessment evaluation, they have the ARD meeting, and they put forward the IEP. That all could have been done within that first semester under the statutory timeframe. So he awarded second semester going forward. And those cases are consistent with that. Okay, I'm accepting that, but it seems to me you have also argued here that you were entitled to, she, the parent was entitled to reimbursement all the way back to the beginning of that first semester. And I just want to understand the law as you are presenting to us. What you just said is more consistent, it seems to me, with what Judge Fish did. It's entirely consistent with what Judge Fish did. But that's the law that you're relying on. I'm not asking you to go further than that. But what you started with did go further with this, this morning what you started with. What it comes down to, Judge, is 20 U.S.C. 1415 I2C3 that says that the court has discretion to grant the award that it deems appropriate. And in this case, based upon the fact of how DISD handled the IEP from Los Angeles and the evaluation of Kelsey, we believe the court had discretion to grant the award. Like I said, we didn't prosecute on that point. And we accept Judge Fish's determination that the appropriate award here is one semester. Well, even under 1415 and all the subparts, would it have been appropriate for Judge Fish to award back to the beginning in light of what you've already, I don't want to use a word like conceded, acknowledged that the school district does have a reasonable period of time to develop its own IEP and determine what a free appropriate public education for this girl was? I think under his discretion he could have. That's not the issue before the court. Well, I do want to understand what the law is, regardless of what remedy you're seeking. I understand. And we're here to seek affirmation of the district court award where he cut that tuition down to one semester based upon the idea, not based upon child fine, because that we do believe was an incorrect finding, but based upon the idea that as a procedural violation and under his discretion, he could reduce the award to one semester. Thank you. Just to conclude, as the court pointed out, in 2009 in Forest Grove the Supreme Court stated, the IDA authorizes reimbursement for the cost of private school, private special education services when a school district fails to provide a fee and the private school placement is appropriate. Regardless of whether the child previously received special education services through the public school. That decision was premised upon 1415 I2C3. Judge Fish did not write new law here. He found, like the Sixth Circuit did in the Nabal v. Bexley City School District case, that the failure to offer FAPE was a procedural violation that necessarily harmed Kelsey. What the district court decision does is it tells school districts they cannot just try to run out the clock on a disabled student. As DISD and the amicus acknowledge, the IDA is designed to avoid gaps in service to students with disabilities. The district court did exactly what the IDA requires. It granted such relief as the court deemed appropriate. DISD never made a meaningful offer of FAPE to Kelsey and Judge Fish awarded half a year of school tuition to Ms. Woody. We respectfully ask that you affirm that decision. Thank you. Your Honors, I'd like to just make a few points in rebuttal. First and foremost, the child fine responsibilities did not end on September 19, 2013 when the letter came from the parent regarding this student. Child fine, as defined in 34 CFR 300.11, is to identify, locate, and evaluate the student. Therefore, the child fine responsibility which the district court held was done in a timely manner by Dallas ISD did not end until April 8, 2014. When would this child have been a transfer student? What block or paper had to be checked for her to be a transfer student? In accordance with the statute, Congress has specifically stated in the transfer statutes both for in-state and out-of-state transfer students that they must actually enroll in the school. Enrollment is the key to receiving services. As said in the NB versus Hawaii case, enrollment is the key to receiving services. Had she enrolled and been dissatisfied with what the school had offered and then gone to the private school within four weeks, we'd be in a different situation regardless of what the answer would be. You say only when you get into these rights of reimbursement for this time period? Actually, Your Honor, the U.S. Department of Education has stated that even where there's a dispute over a transfer student's right to comparable services, that even if there is a dispute, the stay put is not the private school placement. The stay put would not have been reimbursement for that time period. The stay put is general education. So even in that situation, if there was a dispute and the parent had filed a due process hearing, the courts have said that, and the U.S. Department of Education has stated in its policy manuals as well in its questions and answers, that that student would be in regular education. Therefore, there is nothing in the statute, nothing in the clear language of the statute, that Congress intended for these temporary services or if you want to call them comparable services for a student who is placed in private school. The administrative code, the Texas regulations that the appellee has pointed out to you, says that when a student is asking for an offer of FAPE from a private school, you have to have an ARDC meeting and plan for an offer of FAPE. It does not say that you have to offer FAPE at that particular moment. How can you do that without currently evaluating the needs of the child? And as the Supreme Court has said in Andrew F., the current circumstances of the child is what makes the IEP so important. You have to know what's currently going on with this child. And a district has an absolute right to determine that in order to be able to provide an appropriate education for that child. As stated by the appellant, they did not cross-appeal. They did not object to the child fine determination by the district court. And so to determine whether that they can then now go back and say that the reimbursement should have been from September 19th is both not in accordance with the cross-appeal but also not in accordance with the law. Well, he was pressed on that by me. I'm just asking what he thought the broader law was. So I think the attorney did appropriately there at the podium. And, in fact, under Forest Grove, the court did state that you are to look at whether the child was or whether the school district was given that opportunity to evaluate the student. The IEP, as the district court held for the IEP from the California school district, was sadly deficient. It had no measurable annual goals and objectives. It had no present levels of academic and functional performance. And it is unclear whether they even followed the statutory requirements under the IDA. And, in fact, the court said, the district court said, quote, obviously the 2013 IEP was sadly deficient in satisfying the statutory requirements. So it is understandable why DISD needed additional information about the student in order to put forward an appropriate plan for a free appropriate public education. It is certainly within the court's right to offer reimbursement, but we do feel that reimbursement in any amount is not appropriate. In conclusion, we ask the court to reverse the judgment of the district court and render the decision that the parent not be entitled to reimbursement. Counsel, I have one procedural question. Is there a pending motion for attorney's fees in the district court? Yes, Your Honor, there is a pending motion. The district court has abated that until these proceedings have completed. Thank you.